ROSE ANDERSON, Appellee, v. ROBERT ANDERSON, Appellant.

**DIVORCE:** Corroboration of Harsh Conduct.* Evidence of cruelty in
1 the form of harsh and persistent unkind conduct and willful dis-
regard of the feelings of the wife *may* be sufficiently corroborated
by evidence tending to show a hostile and malicious spirit on the
part of the husband against the wife.

**CONTINUANCE:** Insufficient Grounds. An oral motion for a continu-
2 ance on the ground of the absence of a witness, unsupported by any
showing of surprise, and apparently for the sole purpose of *cross-*
*examining* such absent witness in the event that he was used as a
witness, is properly overruled.

*Appeal from Mitchell District Court.*—C. H. KELLEY, Judge.

FEBRUARY 10, 1921.

REHEARING DENIED MAY 10, 1921.

SUIT for divorce. There was a decree for the plaintiff, and
the defendant appeals.—*Affirmed.*

*Chester W. Johnson* and *Kingland, Dakin & Thonn,* for
appellant.

*Wm. H. Salisbury* and *F. C. Bush,* for appellee.

EVANS, C. J.—I. The parties were married on April 15,
1919. They separated on August 20, 1919, after a very unhappy
association of four months. The ground of the petition is cruel
and inhuman treatment. The alleged cruel
treatment consists of harsh and persistent un-
kind conduct and willful disregard of the feel-
ings of the plaintiff, resulting in impairment to her health.
There was some evidence of personal violence. There was also
much evidence, on the part of the plaintiff as a witness, of sexual
excesses against her will. The plaintiff was 22 years of age
at the time of her marriage, and the defendant was 10 years

1. DIVORCE: cor-
roboration of
harsh conduct.

older. The plaintiff was reared on a farm, where she lived at the time of her marriage. The defendant was a man of considerable experience of the world, and had traveled over much of it, and had lived in many places. Generally speaking, he was sophisticated, and she was not. The plaintiff was an only child, and lived with her father and stepmother upon the father's farm of 160 acres. The defendant entered into an arrangement with the father to farm the place on shares. The evidence shows that he was quite resentful of advice from his father-in-law about methods of doing the work, and that his personal relations with his parents-in-law were frequently unpleasant. The plaintiff left the defendant's bed on August 20th. The defendant left the home permanently on August 27th, having first demanded and received from his wife possession of her engagement ring.

The principal proposition argued by appellant is the insufficiency of the evidence, and especially of the corroborative evidence, to justify a decree. The evidence of the plaintiff herself has been set out in appellant's abstract by question and answer, and covers some 60 printed pages. It is quite impracticable to have to deal very extensively with the details of her evidence. We deem it clear that, if her evidence is to be believed, and if it can be said to have sufficient corroboration, as a matter of law, then it is sufficient to sustain the decree of the court below; and we shall confine our discussion to the corroboration.

Was it legally sufficient? The statutory requirement is that "no divorce shall be granted upon the testimony of the plaintiff alone." Many of the specific acts testified to by the plaintiff were done in the bedchamber, and were not capable of corroboration by direct or cumulative proof. The nature of the corroborative evidence consists largely in showing the general demeanor of the defendant towards the plaintiff during the brief period of their married life. It was, in substance, that he was persistently "angry," "mad," "cranky;" that he called her harsh names in the presence of others, such as "fool," and "God damn liar." Those are epithets that do not easily emanate from a man of ordinary kindness toward a bride of four months. That the parties quarreled bitterly in the bedchamber is cor-

roborated by the testimony of the stepmother, and somewhat by that of the father, in that they could hear the quarreling, without hearing what was said.

Turning to the evidence offered in behalf of the defendant himself, we think that it discloses of itself quite sufficient corroboration to legally justify a divorce, if evidence of the plaintiff, thus corroborated, is sufficient in weight to satisfy the court of its truth.

Wambeam was called as a witness for the defendant. He was a boy 14 years of age, who had worked for the defendant upon the farm. Among other things, he testified, on cross-examination, as follows:

"I remember one time she brought a lunch out, and her husband got to scolding her, and called her a fool. I don't know if she cried. He wasn't scolding her or calling her a fool about the lunch. I don't know what it was about. I heard it. I didn't hear him call her a fool while I was there so very many times. Probably 2 or 3 or 3 or 4 times. I heard him tell, when she wasn't there, that she was a green little fool, and didn't go any place and didn't know anything about anything. I heard that he told her that she was a green little fool and didn't know anything. That was when he was talking to me. He didn't talk that way to any other hired man that I know of. He didn't talk that way to me very much. I didn't keep track of that. He didn't complain any more about his wife. Just let me know he thought she was a fool. Sometimes he was cranky, and sometimes he was good to his wife. When they were in the house and at the table, when his wife would talk to him, I have heard him when he was pretty cranky to her, and when he would snap her up pretty short at the meals, before me and her father and mother. When he went out, the father and mother would talk about him. He and the Missus would sit in the house and talk about Anderson, after he went out. I would say that he was cranky to her probably about twice a week."

Similar testimony was given by another witness, who had been a hired man upon the farm.

The defendant was a witness in his own behalf. While his testimony denies much of the testimony of the plaintiff, yet facts are testified to by him that give material corroboration to

her. It is of a character not suitable for the printed page, and we refrain from setting it out.

We think the corroborating evidence as a whole clearly shows a hostile and a malicious spirit on the part of the defendant toward the plaintiff, and that this showing was consistent with the testimony of the plaintiff, and inconsistent with the denials of the defendant.

We confine our consideration of the case wholly to the question of the kind of cruel conduct here indicated. There was evidence introduced on behalf of the plaintiff, tending to show that she had become, during her marriage, infected with venereal disease, and tending to fix the responsibility for it upon the defendant. But the trial court did not go into that question or base its finding upon it. The reason for this was that the physician who had examined the plaintiff was absent in California. That fact being made to appear on the trial, the defendant asked for a continuance, which was denied. One of the grounds urged for a reversal now is the overruling of such motion for a continuance. Though that ground of reversal, for another sufficient reason, could not be sustained, yet we have taken the precaution to satisfy ourselves whether the right of plaintiff to a divorce was sufficiently established, regardless of the question pertaining to the venereal disease. We think it is sufficient.

We do not overlook certain evidence which is supposed to support the innocence of the defendant, to the effect that, after he left his wife, he wrote letters to her from other states, and invited her to come and live with him; and that he sent her a $10 check for Christmas, and a skirt, both of which were returned by her. All this may have been done in good faith, or it may have been mere simulation. When it is considered that, after a service of four months, wherein he contributed no capital, he exacted from his father-in-law a settlement for approximately $1,600; that, though he was leaving, he did not pay to his wife a dollar thereof; that he demanded and obtained from her the diamond ring; that he promised to pay her doctor's bill, and did not pay it; that he began a damage suit for $25,000 against her parents, and that the same was pending when the Christmas gift was tendered, the skirt and

$10 check become somewhat infinitesimal. If they could have been successful to win again the affection of the wife, it would have been a sufficiently cheap wooing to justify the expenditure.

II.  At the close of the evidence for plaintiff, the defendant moved for a continuance, because of the absence of Dr. Savery in California, he being the physician that treated the plaintiff. This motion was an oral motion made by counsel. Though it was put upon the ground of surprise, no showing of surprise in fact was made or attempted, either by affidavit or by any form of evidence. The colloquy between court and counsel indicated, not that the defendant wished to use the doctor as a witness, but that he wished to *cross-examine* him, in the event that he was used as a witness by the plaintiff. The request for a continuance did not state any fact which defendant expected to prove by him. We think it was clearly within the discretion of the trial court to refuse the continuance upon such an application. No other grounds of reversal are laid. The decree below must, therefore, be—*Affirmed.*

2. CONTINUANCE: insufficient grounds.

WEAVER, STEVENS, and DE GRAFF, JJ., concur.