FARMERS & MERCHANTS STATE SAVINGS BANK, Appellant, v. JOHN P. KRIEGEL et al., Appellees.

**CHATTEL MORTGAGES:** Execution—Fraud. Evidence held insuffi-
1 cient to show fraud in the execution of a chattel mortgage.

**FRAUDULENT CONVEYANCES:** Preference to Creditors. Principle
2 reaffirmed that one creditor may legally obtain a preference over other creditors.

**CHATTEL MORTGAGES:** Real Estate and Chattel Mortgage Com-
3 bined. A provision in the granting and defeasance clauses of an ordinary real estate mortgage to the effect that the mortgage covers, not only the real estate, but "all * * * *uses and profits* thereof," does not constitute a *chattel* mortgage on the products raised on the land and severed therefrom, or on the animals nurtured by such products.

**WORDS AND PHRASES:** "Uses and Profits." The term "uses and
4 profits," employed in the granting and defeasance clauses of an ordinary real estate mortgage, does not embrace ripened grains severed from the soil, or animals nurtured by such grains.

*Appeal from Delaware District Court.*—GEORGE W. WOOD, Judge.

NOVEMBER 13, 1923.

THIS action was brought as an attachment suit upon a promissory note against the defendants John and Albert Kriegel. The writ of attachment having been served upon certain personal property, Leeper intervened, as an alleged holder of a chattel mortgage on the same, and claimed the possession of the attached property. Thereafter, Cloud intervened also, as a holder of a chattel mortgage upon the same property, and claimed the prior right thereto. The real controversy at the trial was as between the attachment plaintiff and the intervening mortgagee Leeper and the intervening mortgagee Cloud, each of whom claimed to have a first lien upon the attached property. The decree of the trial court established the mortgage of Leeper as a first lien and the attachment of the plaintiff as second, and dismissed the petition of intervention of Cloud. The attachment plaintiff and Cloud have each appealed.—*Affirmed.*

*Blair & Doolittle* and *Trewin, Simmons & Trewin,* for appellants.

*Irving D. Long* and *Campbell & Campbell,* for appellees.

EVANS, J.—In the early part of 1920, the defendants Kriegel became the owners of a farm in Delaware County, and entered into possession thereof. They executed first and second mortgages thereon, one of which was taken and held by the intervener Cloud, and is the mortgage under which he claims in this case. In September, 1921, the Kriegels executed a chattel mortgage to J. M. Leeper, intervener, to secure a note of $3,000. Under this mortgage, Leeper claims the right of possession of all the personal property upon which the writ of attachment had been levied. One of the grounds of attack made upon this mortgage is that it was fraudulent, and therefore void. If it be not fraudulent, it is concededly prior to the attachment. It is not prior, in point of time, to the mortgage of Cloud, intervener. If it is entitled to priority as against Cloud, it is because Cloud

acquired no lien upon the property under his mortgage. The questions to be considered, therefore, may be stated in the following order.

1.  Was Leeper's mortgage fraudulent?

2.  Was Cloud's mortgage effective to create a lien upon the particular property taken under the writ of attachment?

If both of these questions be answered in the negative, the decree must be affirmed. If either question be answered in the affirmative, the decree must be reversed.

I.  Was Leeper's mortgage void? The grounds of attack are that the Kriegels executed it with intent to defraud their other creditors, and that Leeper knew of such intention; that

1. CHATTEL MORT-
   GAGES: execu-
   tion: fraud.

the Leeper note of $3,000 was given for a debt contracted by John Kriegel alone, and that the chattel mortgage executed by both brothers was given upon the joint or partnership property of both, and was, therefore, a fraud upon the creditors of the partnership; that Leeper did not hold said $3,000 note at the time the mortgage was executed.

The evidence clearly shows that, in February, 1920, Leeper loaned $3,000 to John Kriegel for use in the transaction of purchase or equipment of the farm; that the note given therefor was signed by John Kriegel alone; that, before making such loan, he had arranged with the Farmers Savings Bank of Hartwick, Iowa, to advance the money by purchasing the Kriegel note with Leeper's guaranty or indorsement thereon. This arrangement was carried out. The first note became due in February, 1921, and was not paid. A new note was taken, signed by both John and Albert Kriegel, payable to Leeper. Leeper used this note in the taking up of the other, and transferred the same to the same bank, under the same arrangement. He was at all times liable to the bank on the paper. This was his status at the time he took the mortgage. Before the trial, the note had been turned back to him by the bank, and was held by him at such time. The bank intervened in this action, and confirmed the right of Leeper to the note and to its security.

Leeper, being a bona-fide creditor, had a right to demand security and to acquire preference over other creditors if he could. In so doing, he was not affected by any intended fraud

2. FRAUDULENT
CONVEYANCES:
preference to
creditors.

on the part of the mortgagors as against other creditors, or by notice thereof, provided that he himself acted honestly and within his legal rights. To acquire a preference was not of itself a fraud. The record does not disclose any act on the part of Leeper which operated to any extent to hinder or delay other creditors, except the fact of the priority which he had obtained by the security of his own debt. The note which the mortgage was given to secure was the note dated March 22, 1921. This note had been signed by both brothers. They were, therefore, both liable thereon. There was no infirmity, therefore, in the chattel mortgage on the theory that it was given upon joint property to secure the individual debt of one of the parties only. Nor was there infirmity in the mortgage because the bank was the owner of the note at the time the mortgage was given. Under Leeper's arrangement with the bank, he had a direct interest in protecting the payment of the note. We see no reason why the mortgage would not attach itself to the note as a security therefor, either in the hands of the bank or in the hands of Leeper. The issue here is in equity, and equity follows substance rather than mere form.

We reach the conclusion, therefore, that Leeper's mortgage was a valid record lien at all times on and after September 23, 1921. The attachment was not levied until several months thereafter. It necessarily follows that it took priority over the attachment lien.

II. It remains to consider the mortgage of Cloud. This mortgage, if a valid lien upon this property, was prior in date and in registration to that of Leeper. If it is to be construed

3. CHATTEL MORT-
GAGES: real
estate and chat-
tel mortgage
combined.

as a chattel mortgage upon this property, then it became such as of its date, in February, 1920, and constructive notice thereof was imparted as of the date of its registration, in May, 1921. The serious question as to this mortgage is, Was it a chattel mortgage at all, within the ordinary meaning of the term?

It was primarily a mortgage for $13,500 on the real estate, and was given as a second mortgage for a part of the purchase money of the farm. It did not, in terms, purport to be a chattel mortgage, unless it became such by the necessary legal effect

of the enumeration contained in its granting clause. It bore the caption, "Real Estate Mortgage." It purported to grant, mortgage, sell, and convey unto the said mortgagee the following described premises (describing the farm):

"Together with all tenements, hereditaments, appurtenances, rents, *uses and profits* thereof, and also all right, title, interest and estate of mortgagors or any of them in and to said premises including dower, right of dower, curtesy and surviving spouse's distributive share, homestead, and the right to the possession of said premises during the period of redemption, all of which are hereby also expressly waived, relinquished and released; to have and to hold forever to mortgagee, for the uses and purposes herein expressed, free from all benefit of exemption laws."

Following the grant is the covenant of warranty of title in fee simple. The defeasance clause provides:

"If any such default shall be made, the holder of this mortgage shall, before or on the commencement of an action to foreclose this mortgage, or at any time thereafter, be entitled to the appointment of a receiver who shall have the power to enter upon, take, hold possession, cultivate and operate said premises, and to rent the same and collect the *rents, issues and profits therefrom,* until the judgment is fully paid or the time for redemption has expired, and after paying such reasonable charges as shall be approved by the court apply the balance of the sums so received upon the indebtedness secured by this mortgage, and application thereof may be made before suit is instituted to foreclose this mortgage, or in such action, either before or after judgment, or even after the sale of the premises under such foreclosure proceedings, and the right to the appointment of such receiver shall in no event be barred, forfeited or retarded by reason of judgment, decree or sale in such foreclosure, and the taking possession as herein provided, shall in no manner prevent or retard the collection of the mortgage debt or any part thereof by foreclosure or otherwise."

The property now claimed under this mortgage consists of oats, corn, cattle, horses, hogs, hay, etc. The grain and hay are claimed on the theory that they were produced out of the soil of the mortgaged farm, though now severed therefrom. The cat-

tle and horses and hogs are claimed on the theory that they were either produced upon the farm or were nurtured therefrom by the products of the farm.

It will be seen that the question presented is wholly one of the construction of the language of the mortgage. Does the language thereof indicate a mutual intent of the parties that the mortgage should be a chattel mortgage, as well as a real estate mortgage?

It will be noted that the mortgage purports to cover the farm, together "with all tenements, hereditaments, appurtenances, rents, *uses and profits* thereof." The foregoing is the proviso of the mortgage which is claimed to give it a chattel character. What are the chattels which are fairly included within the foregoing description? It is not claimed that any are included in "tenements, hereditaments or appurtenances." No "rents" are involved herein. This leaves us the enumeration only of "uses and profits." Can this term in this connection be fairly construed to describe cattle and horses and hogs, or even the ripened grains that have been severed from the soil?

4. WORDS AND PHRASES: "uses and profits."

Much argument is devoted to the proposition that a valid chattel mortgage may be executed upon property not *in esse,* to become effective *in futuro;* that there is no legal impediment to incorporating both a chattel mortgage and a real estate mortgage in the same instrument; and that such an instrument may be recorded in both characters, under the provisions of Chapter 352, Acts of the Thirty-eighth General Assembly, and Chapter 246, Acts of the Thirty-ninth General Assembly. All this may be granted; but the more troublesome question for this appellant is: Does the instrument by fair construction purport to be a chattel mortgage, and, if so, are its terms sufficiently definite and comprehensive to include the particular property involved herein as past productions of the farm?

The phrase "uses and profits" has its pertinent place in a conveyance of real estate, whether by deed or mortgage. As such, it is descriptive of the necessary incidents of the ownership and possession of real estate. It does not necessarily imply any reference to personal property. If it is to be construed as giving a chattel-mortgage character to the instrument, a reason

for such a construction must be found in other portions of the instrument. First of all, it must be construed with reference to the defeasance clause. *Swan v. Mitchell,* 82 Iowa 307. This enumeration reappears in the defeasance clause. The meaning and intent of the terms used are made to appear therein. The defeasance clause provides the procedure to be followed after default. It utilizes all the provisions of the granting clause, including the "uses and profits." It fixes beyond fair debate the construction of the instrument strictly as a real estate mortgage, and provides for possession of the real estate through a receivership, and for the uses and profits thereof as incidents of such possession. The term "uses and profits," as used in the granting clause and as used in the defeasance clause, must be deemed to mean the same thing. It must be construed, therefore, as referable to the remedy of enforcement of the real estate mortgage. We are clear that the language of the instrument will not fairly bear any other construction. The language is not such as would apprise a mortgagor that he was executing a chattel mortgage, as well as a real estate mortgage. To so construe this instrument would be to introduce into it an element of stealth, and to impose upon the mortgagor a contractual obligation of which he was himself unconscious; because only an astute mind could see the susceptibility of this instrument to such a construction.

We have had occasion heretofore to consider similar provisions in real estate mortgages. *Swan v. Mitchell,* 82 Iowa 307; *First Nat. Bank v. Security Tr. & Sav. Bank,* 191 Iowa 842. Our holding in the cited cases is in line with that of the great majority of other courts. For an exhaustive note dealing with the holding in other jurisdictions, see 4 A. L. R. 1410. We do not overlook this appellant's contention that there is a distinction to be noted between the terms of this instrument and those of the instruments construed in the cited cases, and that the distinctive effect of the provisions in this instrument is to confer upon the holder of the mortgage a primary security, and not a secondary one. Manifestly, if it does confer a primary security in the sense contended, then there is a distinction, and it is decisive. But does it confer primary security? That is the very question we are considering. We hold that it does not.

Some reliance is placed in argument upon the case of *Funk v. Mercantile Tr. Co.*, 89 Iowa 264, which was a case where a coal mining corporation executed a mortgage to the defendant company, to secure its bonds for $100,000. The mortgage purported in terms to include all the property of the corporation, real and personal, and included in terms "all money and credits due, or to become due to it, and all the contracts and agreements made or to be made, and all and singular any property that may be acquired in the future * * *, and all and singular the entire property of the party of the first part, both real and personal, wherever found," etc. The case has little bearing upon the real question before us. We reach the conclusion that this appellant's mortgage cannot be construed to be a chattel mortgage.

III. The foregoing disposes of the decisive questions in the case, and we have little occasion to deal with other features of the argument. There are contentions in the briefs that the attachment levy was invalid; that the equities are with each respective appellant; that the Kriegels made false representations to the attachment plaintiff, etc.

In view of the conclusion reached in the foregoing division, neither alleged mortgagee has any interest in contesting the attachment. Leeper has none, because he has established his priority; Cloud has none, because he has failed to establish his mortgage; the judgment defendant has not appealed. We give no consideration, therefore, to the question. So far as the so-called equities are concerned, if they were material, it would be difficult to differentiate as among the three creditors. Each loaned his money in good faith to the Kriegels, to be used in the common enterprise which later proved disastrous. The equity of one is as appealing as that of the other. In such a case, the race is to the swift, and priority is established by the almanac. We have already considered the question of fraud. Indeed, if there be any evidence of fraud in a legal sense, it is very meager, unless disaster can be deemed such. This farm was purchased by the Kriegels, young men, at a time when prices were at their peak, in 1919. It was a fine farm, and supposedly worth its high price. The purchasers put all they had into it, some $12,000 or $14,000, and the lenders, parties herein, contributed their respective quotas. By the contraction of values which fol-

lowed soon thereafter, the purchase proved to be a disaster to all who put money into the enterprise. Only the vendor profited. The Kriegels became insolvent by the operation of the economic law of gravitation. Just when they reached the point of insolvency, no one can say. They were not insolvent when they obtained any of the credits. The false representation charged against them that they did not disclose their indebtedness to Leeper was made long after credit had been extended, and in resistance to a request by the attachment plaintiff for security. It was made many months before the Leeper mortgage, and perhaps before they had reached a point of insolvency in the fall of values. If the attachment plaintiff was injured by it, it has already availed itself of the only remedy possible to it.

For the reasons indicated in the first and second divisions hereof, the decree of the district court is, in all respects, affirmed. —*Affirmed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.