JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY OF BOSTON, MASSACHUSETTS, Appellant, v. MICHAEL W. LINNAN et al., Appellees.

FEBRUARY 7, 1928.

*Tinley, Mitchell, Ross & Mitchell* and *A. J. Shaw*, for appellant.

*Kelleher & Mitchell, Whitney & Whitney, T. F. Lynch*, and *Healy, Thomas & Healy*, for appellees.

STEVENS, C. J.—This is an action in equity, to foreclose a mortgage upon the southwest quarter and the south one half of the northwest quarter of Section 1, and the southeast quarter of Section 2, and the northwest quarter and the northwest quarter of the northeast quarter of Section 12, Township 91, Pocahontas County. A decree foreclosing the mortgage on the real estate and ordering special execution was entered in favor of appellant. This appeal presents a controversy between appellant and the Farmers Loan & Trust Company of Sioux City and the Farmers Trust & Savings Bank of Pocahontas, Iowa, as to the priority

of their respective claims to the rents, issues, and profits arising from the mortgaged premises after default by the mortgagor in the payment of interest and taxes, and the right of appellant to the appointment of a receiver to collect the same.

The mortgage in question was executed December 15, 1920, to Annis & Rohling, of Council Bluffs, to secure a loan of $57,000, due January 1, 1926, with interest at the rate of 6½ per cent per annum. On December 21st, the mortgage was assigned by Annis & Rohling to appellant. It was promptly placed of record in the office of the county recorder of Pocahontas County, and, on November 13, 1923, was indexed in the proper record of said county as a chattel mortgage. The mortgagor defaulted in the payment of interest and taxes for the years 1923 and 1924. The appellee Farmers Loan & Trust Company held a second mortgage on the same land, which was foreclosed, and a sheriff's deed executed to a trustee of the bank, to which conveyance was made October 22, 1925. The land was sold for taxes for the years 1923 and 1924, and purchased by the appellee Farmers Trust & Savings Bank; but, at the time of the trial, tax deed had not been issued. On January 26, 1925, the mortgagor conveyed all of the described premises to his son, W. B. Linnan, who, in turn, leased a portion thereof for the year 1925 to Charles J. Linnan, and the remainder to John C. Bittner. Each of the foregoing leases was assigned by the lessor in March, 1925, to the appellee Farmers Trust & Savings Bank of Pocahontas, Iowa. On March 12, 1924, appellant gave notice to the mortgagor and to the appellees Farmers Loan & Trust Company and Farmers Trust & Savings Bank of Pocahontas, in writing, by registered mail, that the mortgagor was in default in the payment of interest, and that the holder of the mortgage elected to declare the entire debt due, and that, unless interest was paid for the years mentioned, foreclosure proceedings would be begun. On February 19, 1926, appellant caused a demand in writing to be served upon the Farmers Trust & Savings Bank of Pocahontas for an accounting of the rents, issues, and profits received by it from the mortgaged premises as assignee of the lessors for the years stated.

The material provisions of appellant's mortgage are as follows:

"And the party of the first part hereby pledges the rents,

issues and profits of said real property for the payment of said principal sum, interest, attorneys' fees and costs, and authorizes, agrees and consents that in case of any default as above mentioned, and the filing of a bill or petition for the foreclosure of this mortgage, the court in which said suit shall be instituted, or any judge thereof, shall at the commencement of said action or at any stage during the pendency or progress of said cause, on application of the plaintiff, appoint a receiver to take possession of said property, and collect and receive said rents and profits, and apply the same to the payment of said debt so in default, interest, attorney's fees and costs, under the order of the court; and this stipulation for the appointment of a receiver shall apply and be enforced whether said property or any part thereof is used as homestead or not, and without proof of any other grounds for the appointment of a receiver than the default aforesaid.

"The stipulation is hereby made binding on said party of the first part, his heirs, administrators, executors, grantees, lessees, tenants and assigns, and in case of the renting or leasing of said premises, while this mortgage remains unsatisfied, all rent accruing after default shall be paid by the tenant or lessee to the mortgagee herein, or its successors, to apply on said debt as aforesaid, and no payment of rent coming due, accruing or covering the period after such default shall have occurred, made to anyone other than said mortgagee, or its assigns, shall constitute payment or discharge of said rental."

Three major propositions for reversal are argued by appellant, namely: (1) that the mortgage, by its terms, created a specific lien upon the rents, issues, and profits of the mortgaged premises; that same was duly and properly filed of record in the office of the county recorder of Pocahontas County, and indexed as a chattel mortgage; (2) that the mortgage, by its specific terms, assigned the rents, issues, and profits arising from the mortgaged premises to the appellant, as security for the loan; and (3) that it was entitled to a decree establishing the lien of its mortgage upon the rents, issues, and profits as a chattel mortgage, to a foreclosure thereof, and to the appointment of a receiver to carry out both of the foregoing provisions of the contract.

Before we take up the discussion of the propositions and

contentions of appellant, attention should be called to the record. An amendment to the abstract was filed by appellant, alleging that, on August 4, 1926, a special execution was issued, and the mortgaged premises, on September 4, 1926, sold by the sheriff of Pocahontas County to appellant for the sum of $76,573.56, leaving a deficiency judgment against the mortgagors of $5,000. A motion was filed by the appellee Farmers Loan & Trust Company to strike the amendment. The matters therein alleged arose subsequent to the judgment, and, while we may assume that they were made of record in the clerk's office, this does not make them a part of the record of the trial below. This being true, the same cannot be considered on this appeal. The motion, therefore, of appellee to strike the amendment is sustained. Whether this should terminate the right of appellant to a further review of the questions presented on this appeal, we shall not determine. The question is not raised by appellee.

Many questions involving similar provisions of real estate mortgages have been recently before this court for construction. Counsel have distinguished some of these cases from the case before us, and pointed out the difference in the language used. Do the distinctions pointed out distinguish the cases from the one before us in principle? In some of our prior decisions, there is reference to the real estate as primary, and to the rents, issues, and profits as secondary, security. *Farmers & Merch. St. Sav. Bank v. Kriegel*, 196 Iowa 833. So far as this distinction has been recognized by this court in the construction of the various mortgage clauses we have had occasion to consider, it has been based upon the circumstances, relationship, and obvious intention of the parties. This court has repeatedly held that a mortgagee has no lien upon the rents, issues, and profits under a clause merely pledging the same as security for the debt, without making the same a present lien thereon, until an action to foreclose the mortgage is commenced and the appointment of a receiver requested. *Young v. Stewart*, 201 Iowa 301; *Kooistra v. Gibford*, 201 Iowa 275; *First Nat. Bank v. Security Tr. & Sav. Bank*, 191 Iowa 842; *Hakes v. North*, 202 Iowa 324; and many other cases. The rule of the foregoing cases is obviously sound. The intention of the mortgagor, upon the one hand, to pledge the rents,

issues, and profits arising from the premises in question as security for the debt, and of the mortgagee, upon the other, to claim a lien thereon only in the event that the real estate proved insufficient to satisfy the debt, is manifest. It cannot be presumed that either party intended or contemplated an agreement that would work an unnecessary hardship upon the other.

The right of the mortgagor to freely sell and dispose of crops grown upon the mortgaged premises, or to assign the rent therefor at any time prior to the commencement of an action to foreclose the mortgage, and for the appointment of a receiver, has been repeatedly sustained by this court; and, unless the language of the mortgage in question calls for a different interpretation, or the application of some other contracting principles, these cases must be followed in this case. *Hatcher v. Forbes*, 202 Iowa 64; *Hakes v. North*, 199 Iowa 995; *Kooistra v. Gibford*, supra; *Young v. Stewart*, supra.

Let us now examine the pertinent provisions of appellant's mortgage in the light of the foregoing well established rules. First, attention should be called to the omission of any reference therein to rents, issues, and profits in the granting clause of the mortgage. The omission is not necessarily fatal, but must be considered.

The term of the mortgage indebtedness was six years, with an acceleration clause. The mortgagor agreed and consented that:

"In case of any default as above mentioned and the filing of a bill or petition for the foreclosure of this mortgage, the court in which said suit shall be instituted * * * shall at the commencement of said action or at any stage during the pendency or progress of said cause, on application of the plaintiff, appoint a receiver to take possession of said property, and collect and receive the rents and profits * * * ."

Does this language go only to an appointment of a receiver, or must it be given significance in determining appellant's right to a lien on the rents, issues, and profits? What was to become thereof during the term of the mortgage prior to the default in the payment by the mortgagor of interest or taxes? Is not a perfect right to sell the crops grown or to assign the rent of the premises by the mortgagor prior to default clearly to be implied from the foregoing provisions of the instrument? Manifestly,

the mortgagee could have no purpose in asserting a lien upon rents, issues, and profits so long as there was no default in the terms of the mortgage. The intention of the mortgagee to claim a lien thereon only in case the mortgagor defaulted in the performance of certain designated terms of the contract is not only manifest, but clearly implied thereby. This being true, no present lien upon the rents, issues, and profits was created by the mortgage. This, it seems to us, is as true of the one provision of the mortgage as the other. The provision that, if the mortgagor leased the premises, the rents, issués, and profits should be payable only to the mortgagee or its assigns was intended, like the other provisions of the mortgage, to take effect, at best, only after default by the mortgagee. Thus construed, this provision of the mortgage added little, either to the right or the remedy of appellant, not already contained in the prior paragraphs of the instrument.

This brings us to the pertinent inquiry: Did the lien of appellant attach to the rents, issues, and profits immediately upon the default of the mortgagor to carry out the terms of the instrument, or did it attach only after the commencement of the action to foreclose the mortgage and for the appointment of a receiver?

We think it entirely proper to say that the parties intended the land to constitute the primary security for the mortgage debt. The provision giving a lien upon the rents, issues, and profits was secondary, and intended to meet a possible future contingency. The several clauses of the mortgage must, of course, be construed together. The distinction between primary and secondary security in the sense we have used the term is of significance both as to the nature and character of the lien intended, and also the remedy to be pursued in giving effect thereto. Counsel for appellant concede that the parties could not, by stipulation or contract, bind the court to appoint a receiver, nor to abdicate its discretion in such matters.

The contention is that the lien attached at least immediately upon the default of the mortgagor, and that the right of appellant to have the same enforced against the rents, issues, and profits is superior and paramount to the claims of other creditors who obtained the claims asserted by them with either actual or constructive notice of the terms of appellant's mortgage. If

this interpretation of the contract be adopted, then a question of priority must be determined. The language of the present instrument is not identical with that used in any instrument previously before us for construction. The parties clearly contemplated that effect should be given to the provisions of the instrument relating to rents, issues, and profits through the instrumentality of a receivership. The right of the mortgagee, under the acceleration clause of the mortgage, to foreclose the same at once upon default by the mortgagor is, of course, conceded. While the language of the instrument before us is somewhat different from the instruments involved in our prior decisions, we think the difference is not sufficient to invoke the application of a different principle. The lien, we think, attached upon the commencement of the action to foreclose and for the appointment of a receiver, and not immediately upon the default of the mortgagor.

The foregoing conclusion leaves only, for final determination, the question whether a receiver should have been appointed.

The tract covered by the mortgage comprised practically 600 acres. The only evidence introduced as to its value was the stipulation of counsel that, if a certain witness were present,  he would testify that it was $200 per acre. This was assumed by the court and counsel as well to be the fair market value of the land. The judgment of appellant was that the value was approximately $81,000. Apparently, therefore, the value of the mortgaged premises so far exceeded the amount of the judgment as to leave a safe margin for the payment of the debt. In this situation, the court did not err in refusing to appoint a receiver. The record does not disclose that request was made that the final  ruling on this issue be deferred until after the sale of the land. Under the circumstances, such a reservation might, we think, have been proper. On this point see *Equitable Life Ins. Co. v. Rood*, 205 Iowa ——. It is the rule in this state that the lien of a mortgage upon real estate is not merged in the judgment; and if the same rule is applicable to the rents, issues, and profits, the question of the appointment of a receiver might have been decided after the sale of the real estate on execution.

What we have said disposes of all of the propositions relied

upon by appellant for reversal. The judgment and decree is affirmed.—*Affirmed.*

Evans, De Graff, Kindig, and Wagner, JJ., concur.