DES MOINES JOINT STOCK LAND BANK, Appellant, v. W. C. DANSON, et al., Appellees.

898

June 26, 1928.

Supplemental Opinion October 23, 1928.

*R. J. Bannister, Cosson & Newcomb,* and *T. P. Harrington,* for appellant.

*Sullivan, McMahon & Linnan,* for appellee.

Per Curiam.—Two appeals are here consolidated. They relate to judgments and decrees entered respectively by the Hon. D. F. Coyle, judge, and the Hon. F. C. Davidson, judge.

On the 23d day of February, 1927, the Des Moines Joint Stock Land Bank, appellant, as plaintiff, commenced an action against the appellees, W. C. Danson, E. B. Butler, and Lenette W. Butler, as defendants, for the foreclosure of a real estate mortgage on certain lands in Kossuth County, consisting of 209.75 acres. The real estate mortgage was given by Danson and the Butlers to secure a note of $13,463.62, jointly executed by them. In the petition there was an application for the appointment of a receiver, to collect the rents and profits and apply them on the indebtedness. Default was made by Danson and the Butlers, and judgment in rem was accordingly entered against them, December 8, 1927.

Meanwhile, the appellee Danson filed his voluntary petition in bankruptcy, and was duly adjudged a bankrupt, March 1, 1927. Immediately after the entry of the default, on December 8, 1928, at the request of the appellant, the portion of the petition for foreclosure relating to the appointment of a receiver was duly heard before the Hon. D. F. Coyle, judge, and judgment and decree denying the same entered December 15, 1927.

That controversy was waged between the appellant and the intervener, Zerfass, the trustee in bankruptcy for the appellee Danson. Many items of dispute relate to this phase of the litigation. During the hearing, appellant asked for a continuance of the cause for a few days, in order that he might obtain the original note and mortgage, for the purposes of evidence, but this was refused. Furthermore, appellant demanded "a decree with reservations for a hearing on the appointment of a receiver until the next term of court," and this suggestion, too, was rejected. Then appellant sought to withdraw its application for the appointment of a receiver, and have the question concerning that point reserved until after the execution sale. Again the court disallowed the relief. So, two decrees were prepared, one for the default, and the other declining to name the receiver. Soon after those proceedings, appellant prepared and, filed a formal application for a stay order, pending execution sale and appeal to this court, which was also refused by the district court, but later allowed by us.

Next in order of events was the sale of the real estate under the foreclosure judgment, resulting in a deficiency of $1,000. Appellant now demands a reversal of some or all of the various orders and judgments relating to the receivership.

For the sake of clearness, it is deemed best to state any further facts and circumstances in connection with the discussion of each particular proposition presented for our review.

I. To obtain the appointment of a receiver, when provision therefor is contained in the mortgage, it is necessary to show,  not only that the debtor is insolvent, but also that the security is insufficient. *Parker v. Coe,* 200 Iowa 862; *Young v. Stewart,* 201 Iowa 301. We said, in *Parker v. Coe,* supra:

"Even where the mortgage provides for the appointment of a receiver to collect the rents and profits, we have held that there must be a showing of insufficiency of security, to warrant a court of equity in depriving the owner of the right given him by statute to the possession of the premises during the year for redemption. *Durband v. Ney*, 196 Iowa 574; *Sheakley v. Mechler*, 199 Iowa 1390."

Was that condition met by appellant at the hearing before Judge Coyle in December, 1927? Clearly not. Danson was a bankrupt, and the Butlers were nonresidents, yet no evidence of any kind was offered to show that this 209.75-acre farm was not valuable enough to entirely satisfy appellant's judgment, including interest and costs, aggregating in the total approximately $15,033.32.

Apparently for the purpose of furnishing a sufficient record in this regard, appellant, through its counsel, offered "to accept $1,000 less than the total amount due." Assuming, as we do, without deciding, that such concession on appellant's part can be considered as testimony, yet, nevertheless, it is not admissible to show either the market or security value of the realty. See *Atlantic Nat. Bank v. Korrick*, 29 Ariz. 468 (242 Pac. 1009); 22 Corpus Juris 179, Section 124. Within the text contained in the Corpus Juris citation is the following:

"No probative value can be attached to the mere fact of offers to sell the land in question, and *a fortiori* the same is true as to offers to sell similar or neighboring land. The amount for which an owner would have sold his property is influenced by too many fortuitous circumstances to be relevant on an inquiry as to value. * * *"

Thus, there was no competent evidence upon which the court would have been justified in appointing the receiver.

II. Some statements were received into the record concerning the fact that there was waste, in that the crops were not being properly cared for and harvested. Because of this, appellant argues, it should have been entitled to a receiver.

Under certain circumstances and conditions, it is true, a receiver, because of the general statutory provisions therefor, regardless of the terms of the mortgage, may be appointed, for

 the purpose of preserving and maintaining the security. *McBride v. Comley*, 204 Iowa 622; *Young v. Stewart*, supra. Once more appellant failed in its proof, because it did not show that, even if the crops in question were ruined or lost, the land itself would be depreciated in value thereby to the extent that the security for the indebtedness sought to be collected was not sufficient.

III. Although a receiver is obtained on the theory of preventing waste, as distinguished from the doctrine relating to sequestration of the rents and profits for application upon the  debt, even then, in such event, those chattels cannot be used as additional security for the reduction of the obligation. *McBride v. Comley*, supra. Apt language employed in the *McBride* case is:

"Forsooth, the pretext of this prevention [stopping waste] cannot be used as a camouflage for the real, in order to appropriate property not covered by the original lien, and through this unauthorized method acquire unpledged resources with which the mortgage burden may be partly or wholly paid. * * * "

Likewise, in the case at bar, appellant could not avail itself of the rents and profits for the reduction of the amount due it upon the theory of a receivership to avoid waste and destruction.

IV. Another difficulty is encountered by appellant at this juncture, in this: the 1927 crops were in dispute. Therefore, whatever waste related to the failure to protect them has already been committed. Emergency in this regard does not now exist. Consequently the question is moot at this late date.

V. Further consideration must now be directed to the question of whether or not a continuance should have been granted. According to the record, there was only one more day in the term. Application was for a longer period. Resultantly, the cause would have gone over the term, had appellant's re-

 quest been allowed. Moreover, appellant did not ask for this favor at the beginning of the trial, but rather, at the end thereof, when it was apparent that it was not going to succeed in its efforts to obtain a receiver. Had such redress been demanded in the beginning, no doubt the trial court should have granted it. *Equitable Life Ins. Co. v. Rood*, 205 Iowa 1273; *John Hancock Mut. Life Ins. Co. v. Linnan*, 205 Iowa 176. Nevertheless, it is another thing for a litigant to try his cause in reference to the receivership before foreclosure sale, and then, at the moment of defeat, as a matter of final salvation, change front, and ask for the continuance of that very cause, in order to prevent the antagonist from reaping the fruits of the apparent victory. Discretion in this regard is possessed by the trial court. *Cavanagh v. O'Connor*, 194 Iowa 670; *Percival-Porter Co. v. Oaks*, 130 Iowa 212; *Reed v. Lane*, 96 Iowa 454; *Anderson v. Anderson*, 191 Iowa 497; *Linnemann v. Kirchner*, 189 Iowa 336.

Additional time was not desired by appellant due to any cause constituting a ground for continuance. With this state of the record before us, we do not feel justified in interfering with the court's discretion in the premises.

VI. Absence of the original note and mortgage was not a legal excuse for an adjournment or "continuance." A justifiable reason for not having those documents in court was not shown. Anyway, had they been there, the final result of the trial would have been the same; for, without the required showing concerning the insufficiency of the security, appellant could not prevail.

For the purposes of this discussion, we are treating the record as if it included the said note and mortgage, properly identified and introduced.

VII. Even though this be so, appellant further urges that the judgment of Judge Coyle should be reversed, wherein denial was made of the motion to dismiss, with the right to refile or continue the same cause after the execution sale.

If appellant intended this step as another motion for "continuance," decorated with a different phraseology, of course it was not entitled to the relief after the ruling on the first application of that kind. Manifestly, too, appellant had

a right to dismiss its cause of action without prejudice, provided it could avoid the objection of splitting actions. *Equitable Life Ins. Co. v. Rood,* supra, and *John Hancock Mut. Life Ins. Co. v. Linnan,* supra. But, as we understand appellant's position, it is that the trial court erred in refusing to permit the withdrawal of the receivership application in such a way as to keep the cause within the jurisdiction of the court, as contemplated by *Equitable Life Ins. Co. v. Rood,* and *John Hancock Mut. Life Ins. Co. v. Linnan,* supra. The district court looked upon this maneuver of the appellant's as, in effect, a renewal of the prayer for continuance, and denied it accordingly. After first asking for a trial on this subject, and then proceeding therewith until the tribunal in charge suggested there could be no recovery, it is too late (without extenuating circumstances) to ask for a continuance or withdrawal of the application with the right to reassert it in such a way as to continue the court's jurisdiction. Had such application been made before the trial was begun, no doubt it should have been allowed, and the receivership proceedings postponed for further hearing, until after the execution sale. *Equitable Life Ins. Co. v. Rood,* and *John Hancock Mut. Life Ins. Co. v. Linnan,* supra.

VIII. Finally, it is insisted that the judgment and decree entered by Judge Davidson after the execution sale should be reversed. Principally the ground therefor suggested is that, on the final date, the record conclusively showed that through the execution sale there was a deficiency judgment of $1,000, in addition to the fact that Danson was a bankrupt and the Butlers were nonresidents.

Such, within itself, under proper circumstances, would be sufficient. However, there are at least two reasons why appellant cannot succeed on this point: First, conceding (without determining) that the new application before Judge Davidson was a continuation of the old, then the subject-matter thereof had been previously adjudicated in Judge Coyle's court. Two trials on the same issue, of course, are not permissible; and second, granting (without settling the matter) that the trial before Judge Davidson was on a new petition, yet appellant would not be entitled to a receiver, notwithstanding the insufficiency of the security and the insolvency or lack of power to collect from

the original debtors. This pronouncement is based upon the proposition that, before the new proceedings were commenced, the rights of Danson, the bankrupt, in the rents and profits had previously completely and fully passed to the intervener, Zerfass, trustee in bankruptcy. Necessarily, then, when the second movement was made by appellant to obtain the same, they were burdened with the equities of the trustee.

Discussion of this general subject may be found in *Hatcher v. Forbes*, 202 Iowa 64; *Lynch v. Donahoe*, 205 Iowa 537; *Keokuk Trust Co. v. Campbell*, 205 Iowa 414; *John Hancock Mut. Life Ins. Co. v. Linnan*, supra; *Hakes v. North*, 199 Iowa 995. Quoting from *Hakes v. North*, supra, we find this language:

"We have held heretofore that such a provision [receivership clause] in a real estate mortgage * * * does not operate as a present lien upon the rents, profits, or growing crops of the mortgaged land. Such provision is a part of the remedy provided for the collection of the mortgage, and operates upon the personalty only upon and after the commencement of the foreclosure, and as a part of the procedure. * * * If, as we held, the mortgage proviso [receivership clause] under consideration created no lien *before* foreclosure, then it necessarily follows that it could have no retroactive effect *after* foreclosure. Its operation must be prospective, and not retrospective."

More recently we said, in *John Hancock Mut. Life Ins. Co. v. Linnan*, supra:

"The right of the mortgagor to freely sell and dispose of crops grown upon the mortgaged premises, or to assign the rent therefor at any time prior to the commencement of an action to foreclose the mortgage, and for the appointment of a receiver, has been repeatedly sustained by this court; * * * The lien, we think, attached upon the commencement of the action to foreclose and for the appointment of a receiver, and not immediately upon the default of the mortgagor."

In order for appellant to have a superior right to the trustee in bankruptcy, it was necessary that the former obtain its interest in the rents and profits through the application for a

 receiver before the equities of the latter attached. Hence, assuming that the appellant's second attempt was through a new application (which we must do, in order to avoid the effect of the former adjudication in the first proceeding), whatever right it acquired thereunder commenced at the time the same was filed. At that time, the ownership and right of the trustee in bankruptcy was in existence, so that appellant's claim under the receivership clause in its mortgage, by virtue of the foregoing authorities, became secondary.

Wherefore, the various judgments and decrees of the district courts were proper, and the same should be, and hereby are, affirmed.—*Affirmed.*

### SUPPLEMENTAL OPINION.

PER CURIAM.—The only point seriously contended by appellant on rehearing relates to the rights and equities of the trustee in bankruptcy, as compared with those belonging to the real estate mortgagee under the receivership clause. It is the claim of appellant at this juncture that the "rights and equities" of the trustee in bankruptcy are not different or greater than those of the bankrupt himself. This undoubtedly for many years was the rule, but it appears that the Bankruptcy Act has been amended so as to change the former doctrine in that respect. Section 110 in Title 11 of the United States Code, Annotated, contains this provision:

"(a)   The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

That code editor makes the following historical note:

"Attention is called in this connection to the amendment of 1910, embodied in Section 75 of this title, which is germane to the provisions of this section."

Section 75, there referred to, so far as material, is as follows:

" * * * and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

Upon the general subject relating to the change in the Federal Bankruptcy Statute, the circuit court of appeals for the eighth Federal circuit, in the case of *Albert Pick & Co. v. Wilson*, 19 Fed. (2d Series) 18, said:

"The specific question before us is whether, under Section 47a of the Bankruptcy Act, as amended in 1910 [Section 75 of the United States Code, Annotated, supra], * * * the rights of a creditor levying upon property coming into the control of the bankruptcy court at the time the petition was filed, and, generally, just what additional rights this amendment gives the trustee. This estate was *in custodia legis* from the date the petition was filed, and the title of the trustee, and his rights and remedies, related back to, and are determined as of, that date. * * * The amendment provides, in effect, that the trustee shall have the same title to the property of the bankrupt in the custody of the court that a creditor holding a lien by legal or equitable proceedings levied against the property would have under a state law, and, as to property not in the custody of the court, the trustee should stand in the position of a judgment creditor, holding an execution duly returned unsatisfied. * * * The provisions of the Federal Bankruptcy Act are paramount to any state statute; and state courts follow the decisions of the Federal courts dealing with questions arising under that law. * * * The intention of the Bankruptcy Act prior to 1910 was that the trustee should take the estate precisely where he found it, with no additional rights, excepting, of course, the specific right to set aside preferences and liens acquired within the four-month period. * * * But, as pointed out in Smith-Flynn Commission Co., supra [292 Fed. 465], and the Congressional Record,

61st Congress, 2d Session, 2275-2277, the amendment under discussion was designed to supersede that decision."

If there was no active, valid petition pending wherein a receivership was asked, the mortgagor could have sold or pledged the rents, and his creditors could have taken the same by attachment or execution. Consequently, the trustee in bankruptcy came into that right within the purview of Federal Statutory Section 110, supra, as well as the additional title, powers, and equities under Federal Statutory Section 75, supra.

We do not adjudicate that the appellant is not entitled to the rents and profits involved as against the appellees E. E. Butler and Lenette W. Butler.

Petition for rehearing is overruled.