RALSTON PURINA COMPANY *v.* EVANELLE DETWILER, ALLEN CHAPEL EGGS, INC., THOMAS CROSS, JAMES W. LAMBRIGHT, R. WAYNE DETWILER.

[No. 3-375A40. Filed July 7, 1977. Rehearing denied August 12, 1977.]

514

*Louis Pearlman, Jr., Edward Chosnek,* of Lafayette, for appellant.

*Ralph W. Probst,* of Kendallville, for appellee Evanelle Detwiler, *John D. Ulmer, Yoder, Ainlay, Ulmer & Buckingham,* of Goshen, for appellees Allan Chapel Eggs, Inc., Cross and Lambright.

HOFFMAN, J.—This action arises out of a proceedings supplemental to collect on an alimony judgment entered in a divorce decree on August 9, 1965, in behalf of appellee Evanelle Detwiler against her husband R. Wayne Detwiler. Appellant Ralston Purina Company (Ralston Purina) seeks reversal of the trial court's allocation of personal property pursuant to those proceedings on grounds that appellee Evanelle Detwiler's execution on her prior judgment was insufficient to overcome its security interest in the same personal property of Wayne Detwiler.

The record reveals that the Detwilers had been engaged in farming operations pertaining to raising chickens for egg production. Mr. Detwiler owned in connection therewith a company known as Allen Chapel Eggs, Inc. (Chapel Eggs). After the decree of divorce the former Mrs. Detwiler issued an execution on the alimony judgment on November 9, 1965, to the sheriff of Noble County in an attempt to obtain satis-

faction by attaching the stock of this company. However, the execution was returned unsatisfied and later abandoned by the sheriff at the behest of Evanelle Detwiler's attorney.

Thereafter, on August 26, 1969, Wayne Detwiler entered into a contract and agreement with James W. Lambright and Thomas H. Cross for the sale of his 816 shares of the common stock of Allen Chapel Eggs, Inc. By its terms, $6,150 was paid on the date of the execution of the agreement, and beginning six months thereafter and continuing at six-month intervals for 19 consecutive six-month periods, the sum of $3,700 was to be paid. On the date of execution Wayne Detwiler transferred 75 shares of such stock, and was to transfer 38 shares of the Allen Chapel Eggs, Inc. stock to Cross and Lambright six months after execution, and 37 shares of such stock at each of the remaining six-month intervals. Thereafter, pursuant to the contract Cross and Lambright made payments and Wayne Detwiler made appropriate transfers of stock.

On May 17, 1971, R. Wayne Detwiler and his new wife executed and delivered to Ralston Purina a security agreement and master assignment of the foregoing contract securing a promissory note for a loan to cover the raising of new pullets and layers for egg production. Ralston Purina filed a financing statement memorializing this security agreement with the Secretary of State of Indiana and the recorder of Wayne County, the county of Mr. Detwiler's residence and the location of the Allen Chapel Eggs, Inc. stock. In accordance with the financing arrangement Lambright and Cross, as buyers of the stock, were to make all future payments jointly to Wayne Detwiler and Ralston Purina Company.

Subsequently, on April 29, 1972, Evanelle Detwiler issued another execution on her judgment, this time to the sheriff of Wayne County, Indiana, which was again returned unsatisfied. She then began these proceedings supplemental to execution which culminated in the trial court's finding *inter alia*

that the judgment of Evanelle Detwiler was a valid and prior lien on the shares of stock in the Allen Chapel Eggs, Inc., and that the lien of Ralston Purina Company was second and subsequent to such judgment lien.

Upon the overruling of its motion to correct errors Ralston Purina perfected this appeal contending that as a matter of law its security interest in the proceeds of the sale of stock was superior to the wife's claim.

Generally an alimony judgment standing alone creates no lien in personal property. *Rothchild* v. *State* (1929), 200 Ind. 501, 165 N.E. 60. Such property must be attached by means of an execution to enforce the judgment and in the case at bar where the property so sought is the common stock of a corporation a lien accrues only from the time of levy. IC 1971, 34-1-36-5 (Burns Code Ed.). *See also,* IC 1971, 26-1-8-317 (Burns Code Ed.). Furthermore, while an execution to the sheriff creates a lien on most personal property from the time of the delivery, if a levy was not made before the return day, the lien is lost. *Chatten* v. *Gerber* (1891), 2 Ind. App. 386, 28 N.E. 571. *See also, Hinds, Executor Etc.* v. *McNair et al.* (1955), 235 Ind. 34, 129 N.E.2d 553.

In the case at bar Evanelle Detwiler obtained a lien on the general personalty owned by her former husband upon the execution issued to the sheriff of Noble County. However, when the execution was returned by the sheriff unsatisfied and no further execution was issued on the judgment, the lien on such personalty expired. Moreover since the evidence herein discloses that no *levy* was ever made on the shares of Chapel Eggs stock specifically, the same were never encumbered by the purported lien. Thus, at the time, Wayne Detwiler was free to contract for the sale of the shares of stock in his company. IC 1971, 34-1-36-5, *supra. See generally, Boone* v. *Van Gorder* (1905), 164 Ind. 499, 74 N.E. 4.

Appellee further attacks Ralston Purina's lien contending that the contract for the sale of stock was not a conditional sales agreement, that her former husband owed nothing to Lambright and Cross and they in turn owed nothing to him until the six-month intervals when the specified number of shares of stock were exchanged for the $3,700 and that the whole transaction was an attempted fraud against her. Thus, it is argued that no security interest could exist between the parties to the contract which would benefit Ralston Purina.

In first addressing appellee Evanelle Detwiler's contention that the contract proceeds were unsecurable, consideration should be given to IC 1971, 26-1-9-101, *et seq.* (Burns Code Ed.).

IC 1971, 26-1-9-102, *supra,* provides, in pertinent part:

"Except as otherwise provided * * * this article [chapter] applies so far as concerns any personal property and fixtures within the jurisdiction of this state.

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also

(b) to any sale of accounts, contract rights or chattel paper.

* * * * *

"(3) The application of this article [chapter] to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article [chapter] does not apply."

In the case at bar, Wayne Detwiler made a conditional sale of the stock to Lambright and Cross under the general contract of sale retaining title and possession of the shares until each six-month installment was paid. Thereafter he assigned his contract right in these proceeds to the third-party Ralston Purina. While such circumstances may or may not have sufficient indicia of a security interest they do not, in any event, evince a requirement

that Wayne Detwiler have a security interest in the stock so sold to Lambright and Cross before his assignment of the proceeds to Ralston Purina could allow *it* to perfect a security interest in the assignment for the loan financing. The contract itself was a thing of value owned by Wayne Detwiler. It could be offered by him as collateral regardless of whether he had a security interest with the contract buyers to enforce their payments. According to IC 1971, 26-1-9-106, *supra,* a contract right is "any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper." It is personal property which can serve as collateral under IC 1971, 26-1-9-105 (1) (c), *supra.* *See,* Annot. 30 A.L.R.3d 9, § 7, at 39 (1970). Under IC 1971, 26-1-9-102 (1), *supra,* and IC 1971, 26-1-1-201 (37) (Burns Code Ed.), "Article Nine" applies not only to "any transaction * * * which is intended to create a security interest in * * * chattel paper, accounts or contract rights" but also to "any sale of accounts, contract rights or chattel paper." *See,* IC 1971, 26-1-9-102 (1), *supra.*

Second, appellee Evanelle Detwiler's allegations of fraud are not applicable to the circumstances herein. *See,* IC 1971, 26-1-1-103 (Burns Code Ed.). The record discloses that she failed to properly execute against the personal property of her former husband and therefore had no lien against his property at the time he made the contract for the sale of stock. Moreover, having delayed in her execution from November 9, 1965, until April 29, 1972, her attack on Ralston Purina's priority as fraudulent can be construed under the code as no more than an invitation to determine whether its security interest was ineffective because it failed to fulfill the statutory prerequisites for perfection. Bender's Uniform Commercial Code Service, § 13.07, at 1385.

In this context consideration should be given that portion of the Uniform Commercial Code IC 1971, 26-1-9-301 (1) (b),

(Burns Code Ed.), which renders an unperfected secured creditor subordinate to the rights of one who "becomes a lien creditor without knowledge of the security interest and before it is perfected; * * *." If Ralston Purina had taken a security interest in Wayne Detwiler's contract right to proceeds from the sale of stock but had failed to file a financing statement and the unsecured creditor former wife had executed against the property and so procured a judicial lien thereon, she would have had a prior right absent knowledge of the security interest. *See, Levine* v. *Pascal* (1968), 94 Ill. App. 2d 43, 236 N.E.2d 425. However, Ralston Purina did perfect its security interest by appropriate filing and Evanelle Detwiler's purported statutory lien pursuant to her execution on the alimony judgment had lapsed as to general personalty and never did exist as to the stock. Therefore, Ralston Purina Company's right to the stock sale proceeds was superior to that of Evanelle Detwiler.

Accordingly the judgment of the trial court must be reversed.

Judgment reversed.

Garrard, J., concurs; Robertson, C.J., participating by designation, concurs.

NOTE.—Reported at 364 N.E.2d 180.