**In re Clarion WINZENBURG, Donna Winzenburg, Debtors.**

**Bankruptcy No. 85–01128W.**

United States Bankruptcy Court, N.D. Iowa.

May 8, 1986.

Dumbaugh & Childers, P.C., Cedar Rapids, Iowa, for debtors.

George D. Keith, Waterloo, Iowa, for movant.

*Findings of Fact, Conclusions of Law, and ORDER re Motion to Sequester Rents and Profits*

MICHAEL J. MELLOY, Bankruptcy Judge.

The matter before the Court is a Motion to Sequester Rents and Profits filed by the Federal Land Bank of Omaha (Land Bank) and resisted by the Debtors. The matter came for hearing on July 18, 1985, at which time the parties notified the Court that the facts of the case as alleged in Paragraphs 1 through 6 of the Motion were stipulated to by the Debtors. The Court, having reviewed these facts and the briefs of the parties filed subsequently, now makes the following Findings, Conclusions, and Orders pursuant to F.R.B.P. 7052.

## FINDINGS OF FACT

1. The Debtors filed a Chapter 11 Petition on May 17, 1985.

2. On June 30, 1981, the Debtors executed a note to the Land Bank in the principal amount of $656,000 with interest at the Land Bank's variable rate. To secure payment of the note, the Debtors executed a mortgage to the Land Bank encumbering 280 acres of Debtors' real estate in Bremer County, Iowa. This mortgage was duly recorded.

3. The Debtors are farmers and are using the mortgaged real estate as part of their farming operation.

4. On the date of filing, the unpaid balance on the note was approximately $753,-000.00. The mortgaged real estate had, on the date of hearing, a value substantially less than the debt.

5. The Debtors are in default on the note.

6. The mortgage in its granting clause pledges as additional security "the rents, issues, crops, and profits arising from said lands", and in subparagraph 8 provides:

That in the event action is brought to foreclose this mortgage, the mortgagee shall be entitled to immediate possession of the mortgaged premises, and the court may appoint a receiver to take possession of said premises, with the usual powers of receivers in like cases.

7. Because of the commencement of this bankruptcy case and imposition of the automatic stay of 11 U.S.C. § 362(a), Land Bank has been prevented from instituting a state court foreclosure action regarding the mortgaged real estate, in which proceedings it would have been entitled to have a receiver appointed to collect the rents and profits.

## DISCUSSION

The issue presented in this case is whether the Land Bank may obtain relief from the Bankruptcy Court in the form of a sequestration of rents and profits arising from mortgaged real estate where the Debtors' Bankruptcy Petition stayed the Land Bank's right to commence foreclosure proceedings and request appointment of a receiver.

Bearing on this issue, the Court observes that Iowa Code Section 554.9104 (1985) provides that "this article does not apply ... (j) except to the extent that provision is made for fixtures in section 554.9313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder". Thus, the Iowa Uniform Commercial Code does not apply to the rents and profits clause in this case, and the Court must look to common law in order to begin to analyze Land Bank's claim.

In Iowa, a mortgage pledge of rents and profits does not create a lien on the rents and profits until a foreclosure action is commenced and appointment of a receiver is requested. *Andrew v. Haag,* 215 Iowa 282, 245 N.W. 436, 439 (1932); *see also, John Hancock Mutual Life Ins. Co. v. Linnan,* 205 Iowa 176, 218 N.W. 46 (1928) (right of the mortgagor to dispose of crops grown on mortgaged premises prior to commencement of foreclosure and appointment of a receiver repeatedly sustained by this court). This Court recently affirmed this principle in *In re Brewer,* No. 84-04399, slip op. (Bkrtcy.N.D. Iowa May 1, 1985), a case involving the Land Bank in factually similar circumstances and with identical rents and profits language. Indeed, Land Bank does not dispute that this is the state of the law in Iowa (Brief p. 2).

The case of *Equitable Life Ins. Co. of Iowa v. Brown,* 220 Iowa 585, 262 N.W. 124 (1935) discusses a change in lien perfection of rents and profits enacted by the Thirty-Ninth General Assembly, and codified at § 10032 of the Code of Iowa (1931) (later Section 556.21, Code of Iowa (1962)). This change, effective in *Brown* and a line of cases following it, provided for indexing real estate mortgages embracing chattel mortgage clauses in the chattel mortgage index, making liens on rents and profits effective from the date of the execution of the mortgage and not from the date of the filing of the Petition of Foreclosure in which the appointment of a receiver is asked, as formerly. *Brown,* 262 N.W. at 128. This method of lien perfection was eliminated when Section 556.21 of the Code was repealed upon adoption of the Uniform Commercial Code. *See* 35B Iowa Code Ann. Appendix: Laws Repealed by the Uniform Commercial Code (West 1967).

Land Bank contends, though, that its interest in rents and profits is a property right entitled to the same protection as its right in the underlying security. Since the real estate is insufficient security for repayment of the debt, the Land Bank urges the Bankruptcy Court to sequester the rents and profits, and offers four arguments in support of its position.

First, Land Bank argues that the Debtors' failure to turn over the rents and profits violates the protection of creditors' rights to rents and profits found in § 552(b) of the Bankruptcy Code. Section 552(b) provides:

Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case *to the extent provided* by such security agreement and *by applicable nonbankruptcy law,* except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise (emphasis added).

However, the Court finds Land Bank's argument misses the point of § 552(b), which is that creditors' pre-petition security interests are to be given post-petition effect as warranted under applicable state law. Section 552 reflects Congress' historical concern that property rights usually should be controlled by state law instead of the "mere happenstance" of bankruptcy. *Matter of Village Properties, Ltd.,* 723 F.2d 441, 444 (5th Cir.1984). The applicable state law in this case leaves Land Bank without a perfected lien in the rents and profits arising from the mortgaged real estate, and thus § 552(b) provides no support to Land Bank's contention.

The Court notes that, though Land Bank did not include it in its argument, § 552(b) does afford Bankruptcy Courts the option of deviating from state law "after notice and a hearing and based on the equities of the case". However, it appears Congress intended Bankruptcy Courts would exercise this authority in limited circumstances not

presented in this case. *Matter of Village Properties, Ltd.*, at 444.

Second, Land Bank argues its request for sequestration of rents and profits is supported by *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *Butner* involved a dispute over the right to collect rents during the period between the mortgagor's bankruptcy and the foreclosure sale of the mortgaged property, and settled a divergence among federal courts of appeal as to whether the right to such rents is to be determined by a federal rule of equity or by the rule of lex loci rei sitae.

Land Bank's argument is based on the language of Justice Stevens, who wrote:

> ... The Federal Bankruptcy Court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued.
>
> \* \* \* \* \* \*
>
> For while it is argued that bankruptcy may impair or delay the mortgagee's exercise of his right to foreclose, and thus his acquisition of a security interest in rents according to the law of many states, a bankruptcy judge familiar with local practice should be able to avoid this potential loss by sequestering rents or authorizing immediate state law foreclosures.

*Butner*, 440 U.S. at 56, 57; 99 S.Ct. at 918, 919. *Butner* was decided under the former Bankruptcy Act, but has been held applicable to cases litigated under the Bankruptcy Code of 1978. *Matter of Village Properties, Ltd.*, at 443.

However, this Court concludes (as does the Court in *In re Gotta*, 47 B.R. 198, 201 (Bkrtcy.W.D.Wisc.1985)) that despite the breadth of the language employed in *Butner*, the holding of *Butner* is much narrower. This Court reads *Butner* to hold that the Bankruptcy Court must look to state law to determine a mortgagee's interest in rents and profits.

The essential point is that a properly administered scheme in which the basic federal rule is that state law governs, the primary reason why any holder of a mortgage may fail to collect rent immediately after the default must stem from state law.

440 U.S. at 57; 99 S.Ct. at 919. By looking to state law to define the security interest of the mortgagee, the mortgagee will not be deprived of rights that were his as a matter of state law and the inequity of depriving a mortgagee of a security interest recognized by state law will be avoided. *Butner*, 440 U.S. at 56, 57; 99 S.Ct. at 918, 919. Given that the Land Bank is clearly not entitled under Iowa law to the rents and profits it seeks, this Court refuses to provide otherwise based on *Butner*.

Third, Land Bank argues that denying it protection of its contractual rights to rents and profits would constitute an unconstitutional taking contrary to the Fifth Amendment, citing *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). Land Bank offers no analysis beyond citing the Court to Justice Brandeis' oft-quoted language, 295 U.S. at 602, 55 S.Ct. at 869, and the Court deems the constitutionality argument is without merit.

In a similar context, the constitutionality of the lien avoidance statute of 11 U.S.C. § 522(f) has been upheld in the face of Fifth Amendment challenges. *In re Webber*, 674 F.2d 796, 804 (9th Cir.1982), *cert. den.*, 459 U.S. 1086, 103 S.Ct. 567, 74 L.Ed.2d 931 (1982); *In re Groves*, 707 F.2d 451, 452–53 (10th Cir.1983). In the case at bar, the Bankruptcy Court is merely refusing to grant to Land Bank the benefits of a perfected lien which is concededly and by operation of state law unperfected. If lien avoidances do not constitute an unconstitutional taking, neither does this Court's refusal to sequester the rents and profits. Indeed, the holding of *Radford* is limited to the retroactive application of law. *In re Webber*, 674 F.2d at 803; *In re Pirsig Farms, Inc.*, 46 B.R. 237, 244 (D.C.Minn. 1985). The denial of Land Bank's motion

in no way operates as a retroactive destruction of Land Bank's interest in rents and profits.

Fourth, Land Bank argues that policy considerations, specifically the passing on of loan losses to other borrowers, counsel in favor of granting its motion for sequestration. While the Court is not unsympathetic to Land Bank's concerns, the Court will not change decades of settled Iowa law without far stronger legal grounds for doing so.

Finally, the Court observes that Land Bank is not without remedies for the protection of its secured interest in the Debtors' real estate or its interest, as yet unperfected, in the rents and profits arising from the real estate. If the value of the real estate is in fact valued substantially less than the debt owed to Land Bank, it may seek from the Debtors and through this Court adequate protection under sections 361–363 of the Bankruptcy Code. A lift of the automatic stay as to the mortgaged real estate, if Land Bank is otherwise entitled to such under § 362(d), would allow Land Bank to institute foreclosure proceedings, request appointment of a receiver, and effect perfection of its mortgage lien in rents and profits. This Court, in this ruling, simply refuses to give effect to the lien where state law considers it unperfected.

### CONCLUSIONS OF LAW

■ 1. A mortgage pledge of rents and profits does not create a lien on the rents and profits until a foreclosure action is commenced and appointment of a receiver is requested.

2. Federal Land Bank is not entitled to respect for its interest in rents and profits by virtue of 11 U.S.C. § 552(b), for that Code Section grants post-petition protection to security interests only as warranted under applicable state law.

3. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) does not support giving effect to Land Bank's rents and profits lien, for it narrowly holds that Bankruptcy Courts must look to state law to determine a mortgagee's interest in rents and profits.

■ 4. Refusal to sequester rents and profits, an interest in which is created by mortgage pledge and which remained unperfected as of the mortgagor's filing of bankruptcy petition, does not constitute an unconstitutional taking in violation of the Fifth Amendment.