In the Matter of Donald D. SPEARS, Phyllis M. Spears, Engaged in Farming, Debtors.

Bankruptcy No. 86–3019–C.

United States Bankruptcy Court, S.D. of Iowa.

June 30, 1987.

Reta Noblett–Feld, Cedar Rapids, Iowa, for debtors.

Thomas H. Burke, Des Moines, Iowa, for PCA.

## ORDER ON MOTION TO PROHIBIT DEBTORS' USE OF CASH COLLATERAL

LEE M. JACKWIG, Bankruptcy Judge.

On April 8, 1987 a motion to prohibit debtors' use of cash collateral and request for adequate protection filed on behalf of Production Credit Association of the Midlands (PCA) on March 23, 1987 came on for hearing before this court in Des Moines, Iowa.[1] The debtors filed a resistance to the PCA's motion on April 2, 1987. Thomas H. Burke appeared on behalf of the PCA and Reta Noblett–Feld appeared on behalf of the debtors. At the close of the hearing the parties were given until May 1, 1987 to submit letter briefs on the legal issues presented. The debtors filed a letter brief on April 30, 1987 and requested an evidentiary hearing on a remaining question of fact. The PCA submitted a letter brief on May 1, 1987 and also requested a further evidentiary hearing. On May 1, 1987 the matter was considered fully submitted.

For its motion to prohibit use of cash collateral, the PCA claims to be the holder of a secured claim in the amount of $332,-841.93. The PCA asserts a security interest in cash rent from real estate known as the "Norris Property" and in payments, by virtue of an assignment, under a real estate contract known as the "Knoller Contract." The PCA contends that the debtors use of any portion of the approximately $59,000 received in payments will deplete the PCA's security. The PCA requests that its interest be adequately protected pursuant to 11 U.S.C. section 363(e) or that the debtors be required to segregate the cash payments in a separate interest-bearing account.

For their resistance to the PCA's motion, the debtors assert that the only interest PCA has in the "Norris Property" is a mortgage executed on April 27, 1984, rather than a lien on cash rents received under a lease. The debtors argue that since no

---

1. The court also heard a motion for authority to dismiss Chapter 11 case with permission to refile Chapter 12 filed on behalf of the debtors on March 5, 1987. The motion was resisted by the PCA and the Federal Land Bank of Omaha. A separate decision will be rendered on that matter at a later date.

foreclosure proceedings or request for appointment of receiver had been initiated prior to bankruptcy, the PCA has no interest in rents and profits received from the "Norris Property." With regard to the "Knoller Contract" the debtors contend that the assignment to the PCA, executed by Phyllis Spears on her own behalf and as "attorney in fact" for Donald Spears, was not sufficient to transfer Donald Spears' interest in the contract. The debtors do admit that the assignment operated to give a lien on Phyllis Spears' 30 percent interest in the contract and they have segregated 30 percent or $4,200.00 of the $14,000.00 contract payment in a separate cash collateral account.

The court will first address the PCA's claimed interest in the rents received from the "Norris Property." The mortgage executed by the debtors to the PCA contained the following language:

> In case of a foreclosure of this mortgage under any of its provisions, it is hereby agreed that on filing the petition for such foreclosure, or at any time thereafter, a receiver shall be appointed to take possession and charge of the mortgaged premises at once, and to hold possession of the same until the debt is fully paid and until the time of redemption expires, and all rents and profits derived from said premises shall be applied on the debt secured hereby.

■■■■ This court must look to state law to determine whether and at what time a mortgagee has an interest in rents because it is only at that time that rents become "cash collateral." *Matter of Village Properties, Ltd.,* 723 F.2d 441, 445 (5th Cir. 1984). Under Iowa law a mortgage pledge of rents and profits does not create a lien on the rents and profits until a foreclosure action is commenced and appointment of a receiver is requested. *In re Winzenberg,* 61 B.R. 141, 143 (Bankr.N.D.Iowa 1986); *Andrew v. Haag,* 215 Iowa 282, 245 N.W. 436, 439 (1932); *see also, John Hancock*

*Mutual Life Insurance Co. v. Linnan,* 205 Iowa 176, 218 N.W. 46 (1928). In the instant case, no foreclosure action nor request for appointment of a receiver had been undertaken by the PCA prior to the debtors' filing a petition in bankruptcy. The PCA relies upon *In re Offerman Farms, Inc.,* 67 B.R. 279, 282 (Bankr.N.D. Iowa 1986) for the proposition that the PCA's *right* to file a foreclosure action and to seek appointment of a receiver creates an "interest" in the cash rent that would have been received if such action had been taken. The PCA's "but for" (the filing of bankruptcy) approach does not obviate the "only if" standard—under Iowa law the appointment of a receiver is not automatic, even when the mortgage contains a specific pledge of rents and profits clause. No interest in rents and profits is created until a foreclosure action is commenced and the appointment of a receiver is requested and granted. *See* Iowa Code sections 680.1 and 680.2; *Kooistra v. Gibford,* 201 Iowa 275, 207 N.W. 399, 399–400 (1926); Note, *Mortgage Receiverships in Iowa,* 27 Iowa L.Rev. 626 (1942). Accordingly, the rents received from the "Norris Property" are not cash collateral to which the PCA has an interest.[2]

With regard to the debtors' resistance to the PCA's asserted interest in payments received under the "Knoller Contract", the court finds that a separate evidentiary hearing regarding the circumstances of the assignment by Phyllis Spears to the PCA is warranted. Neither party has specifically briefed the legal issues surrounding the purported assignment by Mrs. Spears of Mr. Spears' interest in the contract, and the court does not have sufficient facts upon which to base a ruling. Accordingly, this aspect of the PCA's motion to prohibit use of cash collateral must be continued.

THEREFORE, based on the foregoing analysis, the court overrules the PCA's mo-

---

**2.** The PCA's argument that its security agreement gave it an interest in the lease proceeds must also fail. The Iowa Uniform Commercial Code specifically excludes application of Article 9 to leases and rents thereunder. *See* Iowa Code section 554.9104(j); *In re Standard Conveyor Co.,* 773 F.2d 198, 204 (8th Cir.1985); *In re Winzenberg* 61 B.R. at 142. The PCA has submitted no authority to counter this view.

tion to prohibit the debtors' use of rents received from the "Norris Property".

IT IS FURTHER ORDERED that the PCA's motion to prohibit the debtors' use of payments received under the "Knoller Contract" is continued pending an evidentiary hearing to be scheduled as the court's calendar permits.