In re **WABASH VALLEY POWER ASSOCIATION, INC.,** Appellant and Cross–Appellee,

United States of America and National Rural Utilities Cooperative Finance Corp., Appellees and Cross–Appellants.

In re **WABASH VALLEY POWER ASSOCIATION, INC.,** Debtor.

**Civ. No. IP 87–1097–C.**
**Bankruptcy No. IP 85–2238 RA V.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 8, 1989.

See also, Bkrtcy., 77 B.R. 991.

Don F. Morton, Wabash Valley Power Assn., Indianapolis, Ind., Peter L. Obremskey, Parr, Richey, Obremskey & Morton, Lebanon, Ind., James P. Moloy, David H. Kleiman, Dann Pecar Newman Talesnick & Kleiman, Indianapolis, Ind., Lee A. Freeman, Jr., Freeman, Freeman & Salzman, Chicago, Ill., for Wabash Valley Power Association, Inc.

J. Christopher Kohn, Civil Division, Dept. of Justice, Washington, D.C., Michael W. Kelly, Office of Gen. Counsel, Dept. of Agriculture, Washington, D.C., Deborah J. Daniels, U.S. Atty., Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, Ind., for U.S.

Alan W. Kornberg, Milbank Tweed Hadley & McCloy, New York City, Thomas D. Titsworth, Bamberger & Feibleman, Indianapolis, Ind., John J. List, National Rural Utilities Coop. Finance Corp., Washington, D.C., for Nat'l Rural Utilities Coop. Finance Corp.

Steven H. Ancel, Ancel & Dunlap, Indianapolis, Ind., for Official Members Committee.

## ENTRY

DILLIN, District Judge.

This cause is before the Court on appeal from an order of the United States Bankruptcy Court for the Southern District of Indiana finding that appellees, United States of America and National Rural Utilities Cooperative Finance Corporation, have a perfected security interest in certain contract rights of the debtor-appellant, Wabash Valley Power Association, Inc., granting the appellees protection in the form of a replacement lien on certain transmission lines and a substation built with proceeds of the contracts, and requiring the debtor to obtain court approval for future construction projects. The Bankruptcy Court denied the appellees' requests for additional protection and for sanctions. For the following reasons, the decision of the Bankruptcy Court is affirmed in part and vacated in part and remanded.

### Background

Debtor, Wabash Valley Power Association, Inc. ("Wabash") is an Indiana not-for-profit electricity generation and transmission cooperative which provides electric service at wholesale to its twenty-four members. In 1978, Wabash entered into a mortgage with the United States Rural Electrification Administration ("REA") to secure the REA's guarantees on loans from the Federal Financing Bank to Wabash. This mortgage was secured by virtually all of Wabash's assets except for vehicles. The security included Wabash's rights pursuant to contracts it had with its members for it to supply and the members to purchase electricity. The mortgage was recorded in the county recorders' offices in all counties in which Wabash owned property, including Marion County, the location of Wabash's main office.

On April 14, 1980, Wabash entered into a supplemental mortgage with REA and the National Rural Utilities Cooperative Financing Corporation ("CFC"). Again, the security was virtually all assets of Wabash, including its contract rights and excepting its vehicles. This mortgage was also recorded in all counties in which Wabash owned property, and on June 10, 1980, a Uniform Commercial Code ("UCC") financing statement with the supplemental mortgage attached was filed in the Indiana Secretary of State's office.

On September 9, 1981, Wabash, as mortgagor, and REA and CFC, as mortgagees, executed a supplement to this mortgage, which supplement was recorded in all pertinent county recorders' offices. Finally, in September 1982, the parties executed an amendment to these mortgages, again recording this in county recorders' offices. On December 14, 1982, a UCC financing statement "supplement" on the September 1981 mortgage supplement and a UCC fi-

nancing statement "amendment" on the September 1982 mortgage amendment were filed in the Indiana Secretary of State's office.

On May 23, 1985, Wabash filed for Chapter 11 bankruptcy, largely due to losses occasioned by the failure of the Marble Hill nuclear project, in which Wabash had made substantial investments. Since then, Wabash has been operating as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107–08. REA and CFC are Wabash's two major creditors. (By June 1988, Wabash owed the United States approximately $850 million.)

On May 16, 1986, Wabash sought the approval of the Bankruptcy Court for Wabash to construct an electrical substation at Prestwick, west of Indianapolis, and two transmission lines, one involving Prestwick and one in the Fort Wayne area (collectively "the Projects"). REA and CFC promptly filed objections. The parties requested no hearing on this issue, the Bankruptcy Court issued no ruling, and Wabash proceeded with Construction of the Projects, construction that allegedly had begun before May 1986.

On December 23, 1986, pursuant to 11 U.S.C. §§ 361–63, REA moved for protection, asserting that Wabash had paid for the Projects with proceeds from its power supply contracts and that pursuant to 11 U.S.C. § 363(a), REA had an interest in these proceeds as cash collateral. By this date, the Projects were practically completed, at a combined cost to Wabash of approximately $613,396.00. The primary source of funds Wabash expended on the Projects was revenues from its power supply contracts. CFC subsequently joined in support of REA's motion for protection.

After a hearing in April 1987, the Bankruptcy Court denied REA's and CFC's requests for protection, finding they had presented no evidence they had perfected their security interests in the contract rights. A second hearing was held in August 1987, and on September 29, 1987, the Bankruptcy Court issued amended findings and an amended order, concluding that appellees had perfected their security interests in Wabash's contract rights pursuant to Indiana law, granting protection in the form of a replacement lien on the Projects and insurance proceeds thereon, and prohibiting Wabash from further construction without court approval.

Wabash appeals this ruling as to the perfection of the security interests, while REA and CFC cross-appeal, contending the Bankruptcy Court erred in refusing their requests for additional protection and for sanctions.

### Memorandum of Opinion

Rule 8013, Fed.R.Bankr.P., provides:

On an appeal, the district court ... may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The Bankruptcy Court's conclusions of law are to be reviewed *de novo*. *United States Farmers Home Admin. v. Buckley (In re Buckley)*, 73 B.R. 746, 747 (D.S.D.1987) (citing *Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621, 625 (8th Cir.1984)).

### Appeal of Wabash

Wabash argues on appeal that REA and CFC have no basis for seeking protection because the contract proceeds at issue here do not qualify as "cash collateral" pursuant to 11 U.S.C. § 363(a). This is so, contends Wabash, because the appellees' security interests in Wabash's contract rights were not perfected.

"Section 544(a) of the Bankruptcy Code provides that, upon the commencement of a case, a trustee or debtor-in-possession assumes the status of a hypothetical lien creditor or bona fide purchaser of real property." *Casbeer v. State Fed. Sav. & Loan Ass'n (In re Casbeer)*, 793 F.2d 1436, 1439 (5th Cir.1986). If a creditor's interest in property of the estate is unperfected, the creditor's interest is subordinate to that of the debtor-in-possession. *United States v.*

*Landmark Park & Assocs.*, 795 F.2d 683, 684 (8th Cir.1986). Thus, in this case, for REA's and CFC's interests in Wabash's contract rights to be superior to that of Wabash as debtor-in-possession and for REA and CFC to be entitled to protection, their interests in the contract rights must have been perfected.

Moreover, 11 U.S.C. § 552(b) provides:

Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

■ In this case, all four of the mortgage documents executed by the parties grant to appellees a security interest in Wabash's contract rights. For example, the September 1981 mortgage provides that Wabash grants to the mortgagees an interest in all of its real and personal property described in the mortgage

including, without limitation:

. . . .

All right, title and interest of the Mortgagor in, to and under any and all contracts heretofore or hereafter executed by and between the Mortgagor and any person, firm, corporation or governmental body or agency providing for the purchase, sale, exchange or transmission of electric power or energy by the Mortgagor together with any and all other accounts, contract rights and general intangibles (as such terms are defined in the applicable Uniform Commercial Code)

heretofore or hereafter acquired by the Mortgagor;

. . . .

Together with all rents, income, revenues, profits and benefits at any time derived, received or had from any and all of the above-described property of the Mortgagor.

Like the other three mortgages, this mortgage also provides:

Whereas, to the extent that any of the property described or referred to herein or in the Mortgage is governed by the provisions of the Uniform Commercial Code of any state . . ., the parties hereto desire that this Supplemental Mortgage and the Mortgage collectively be regarded as a "security agreement" under the Uniform Commercial Code and that this Supplemental Mortgage be regarded as a "financing statement" under the Uniform Commercial Code for said security agreement.

The Court finds that these mortgage provisions create a security interest for REA and CFC in Wabash's contract rights and in the proceeds of those contracts. Pursuant to 11 U.S.C. § 552(b), REA's and CFC's interest extends to Wabash's post-petition contract proceeds "to the extent provided by the security agreement and by applicable nonbankruptcy law."

Numerous courts have found that state law is the "applicable nonbankruptcy law" that governs the priority or perfection of a creditor's interest in proceeds or rent acquired by the debtor post-petition. *See, e.g., Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Casbeer*, 793 F.2d at 1442; *In re Chaseley's Foods*, 726 F.2d 303, 305 (7th Cir.1984) (per curiam); *Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.)*, 723 F.2d 441, 443 (5th Cir.), *cert. denied*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984). Thus, in order to determine whether REA's and CFC's security interest in Wabash's contract rights and in the proceeds of those contracts was perfected, the Court must determine what Indiana law required in May 1985 to per-

fect a security interest in contract rights pursuant to a utility mortgage.

Wabash argues that the relevant Indiana law is that set out in *McCullough v. Union Traction Co.*, 206 Ind. 585, 186 N.E. 300 (1933), in which the Indiana Supreme Court declared that entry and possession were required to perfect a lien on a utility company's earnings, pursuant to a mortgage. Wabash asserts that accordingly, because REA and CFC did not foreclose on the mortgages, their security interests were not perfected.

However, in 1963, Indiana adopted the 1962 version of the Uniform Commercial Code, which expressly states:

> (1) Except as otherwise provided in section 26–1–9–103 on multiple state transactions and in section 26–1–9–104 on excluded transactions, this article applies so far as concerns any personal property and fixtures within the jurisdiction of this state.
>
> (a) to any transaction (*regardless of its form*) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts *or contract rights*[.]

Ind.Code § 26–1–9–102 (1974) (emphasis added). Section 26–1–9–104 excludes (except regarding fixtures) transactions creating or transferring an interest in or lien on real estate, including a lease or rents. The Court finds that whatever Indiana common law may have required in 1933 regarding perfection of an interest in contract rights pursuant to a utility mortgage, the UCC expressly superseded this. *See generally* Coogan & Clovis, *The Uniform Commercial Code and Real Estate Law: Problems for Both the Real Estate Lawyer and the Chattel Security Lawyer*, 38 Ind.L.J. 535, 547–54 (1963) (with advent of UCC, UCC governs perfection of security interests in personal property and intangibles in a "combined" mortgage, including a utility mortgage).

■ Wabash asserts this Court may not properly consider the issue of perfection under the UCC because this was not a basis for the Bankruptcy Court's decision and the issue was not raised by Wabash on appeal. The Court disagrees. The court below did not address the UCC because it found the parties had stipulated that the relevant law was the Indiana Utility Mortgage Statute, Ind.Code § 8–1–5–1. This Court doubts that parties can stipulate as to what the law is. Furthermore, when the issue on appeal is what is the relevant law—a legal issue which this Court is to review *de novo*—we certainly are not bound by "stipulations of law" entered into below. Moreover, the issue of perfection pursuant to the UCC was fully briefed and argued below and undisputed evidence that UCC financing statements on the 1980, 1981, and 1982 mortgages were filed in the Indiana Secretary of State's office was entered into the record. *See Katter v. Arkansas Louisiana Gas Co.*, 765 F.2d 730, 734–35 (8th Cir.1985) (appellate court may affirm on any ground supported by record even though that ground was not directly addressed in the court below); *In re Gilchrist Co.*, 410 F.Supp. 1070, 1074 (E.D.Pa. 1976) (district court adjudicating a bankruptcy appeal may consider any issue presented by the record).

■ Therefore this Court, finding the UCC directly relevant to the issue before us, will address it. The UCC provides that a security interest in contract rights is perfected by filing a financing statement in the Secretary of State's office. Ind.Code §§ 26–1–9–302, –401(1)(c) (1974); *see Ralston Purina Co. v. Detwiler*, 173 Ind.App. 513, 364 N.E.2d 180, 182–83 (1977). Because REA and CFC filed appropriate financing statements in the Indiana Secretary of State's office, and these financing statements had not lapsed at the time Wabash filed its Chapter 11 petition, the Court finds these filings were effective to perfect appellees' security interests in Wabash's contract rights pursuant to the Indiana UCC.

■ What complicates the issue is that in 1965, the Indiana legislature adopted a special utility mortgage statute, Ind.Code § 8–1–5–1. The version of this statute effective in 1985 provided:

Notwithstanding any other statute or rule of law of the state, any mortgage heretofore of [sic] hereafter executed and recorded by a public utility ... in a manner provided for the execution and recording of mortgages upon real estate, may include all or any part of the property of the mortgagor, real, personal or mixed, chattels real and fixtures, and shall constitute a valid lien upon all and every part of the property of the mortgagor described in such mortgage and situated in any county in this state where such mortgage is or shall be recorded in the manner provided for recording real estate mortgages, and neither such mortgage nor any statement respecting the same or any of the property described therein need to be otherwise filed or refiled. The term "mortgage" as used in this act includes deeds of trust and any and all documents creating an interest in property to secure the payment of bonds, notes, debentures and like securities, and any instrument executed to supplement any such mortgage. If any such mortgage by its terms creates a lien upon any property thereafter acquired, it shall be a lien upon all the interest of the mortgagor in such after-acquired property from the date of its acquisition, if such mortgage was or is recorded as provided in this section....

Ind.Code § 8–1–5–1 (1982).

The parties do not dispute that REA and CFC, in addition to the UCC filings, recorded the mortgages with Wabash pursuant to this statute. The parties do dispute whether such recording was effective to perfect appellees' security interests. Wabash argues this statute not only impliedly repealed the Indiana UCC with respect to perfection of utility mortgages, but replaced it with *McCullough*'s common law requirements. The Court finds no merit in this argument. The Court finds instead that the Indiana legislature, like other state legislatures that enacted utility mortgage statutes, intended only to avoid the necessity of filing here, there, and everywhere when a utility mortgage included various types of collateral, by "devis[ing] a means of allowing combination mortgages to be completely perfected through single filings." Coogan & Clovis, *supra*, at 554. Thus, the Court finds that in 1985, to perfect a security interest in contract rights under a utility mortgage, Indiana law required recording in accordance with Ind. Code § 8–1–5–1 or, at most, as REA and CFC contend, alternate filing pursuant to the UCC. Because REA and CFC complied with both statutes, their security interests in Wabash's contract rights clearly were perfected.

Wabash cites numerous recent cases for the proposition that in a lien state like Indiana, despite the utility mortgage statute, entry and possession are required to perfect an interest in profits created by a mortgage or deed of trust. *See, e.g., Waldron v. Northwest Acceptance Corp. (In re Johnson)*, 62 B.R. 24 (Bankr. 9th Cir. 1986); *Oliver v. MBank Dallas (In re Oliver)*, 66 B.R. 426 (Bankr.N.D.Tex.1986); *In re Winzenburg*, 61 B.R. 141 (Bankr.N.D. Iowa 1986). However, none of these cases involves a utility mortgage statute and, for the most part, the cases deal with perfection of an assignment of rents and profits pursuant to a real estate mortgage. As the court in *Winzenburg* stated, it is because the UCC expressly does not apply to rents generated by real estate that these courts looked to state common law for the method of perfection. 61 B.R. at 142; *see also First State Bank of Manchester v. Heims (In re Heims)*, 65 B.R. 112, 115 (Bankr.N.D.Iowa 1986).

■ In contrast, as the court below noted, the issue in this case does not concern a security interest in real estate rents and profits, but in contract rights not directly connected to any interest in real estate. *Cf. Zeeway Corp. v. Rio Salado Bank (In re Zeeway Corp.)*, 71 B.R. 210 (Bankr. 9th Cir.1987); *In re Corner Pockets of the Southwest, Inc.*, 85 B.R. 559 (Bankr.D. Mont.1988) (business profits are not covered by assignment of rents clause in real estate trust deed). Thus, the Court finds these cases inapposite and agrees with the Bankruptcy Court that *McCullough* and its requirement of entry and possession do not

apply to perfection of appellees' interest in the contract rights.

■ As REA notes, some courts have determined that when the lender or guarantor involved in a perfection dispute in bankruptcy is a federal agency, federal rather than state law determines what is required for perfection. *See United States v. Landmark Park & Assocs.*, 795 F.2d 683, 685–86 (8th Cir.1986); *United States Farmers Home Admin. v. Buckley (In re Buckley)*, 73 B.R. 746, 747–48 (D.S.D.1987). However, in the case at hand, the Court finds that the uniform federal law that would apply would be the Uniform Commercial Code.

As explained above, REA and CFC, by filing financing statements in the Indiana Secretary of State's office, complied with the UCC requirements for perfection of a security interest in contract rights.

Thus, whether state or federal law determines the proper method of perfection, REA and CFC had perfected their security interests in Wabash's contract rights. Because these interests were perfected, pursuant to 11 U.S.C. §§ 363(a) and 552(b), REA and CFC were entitled to seek protection as to Wabash's revenues from these contracts as "cash collateral," and the decision of the Bankruptcy Court so ruling is affirmed.

*Cross–Appeal of REA and CFC*

■ In response to REA's and CFC's motion for adequate protection, the Bankruptcy Court granted them a replacement lien on the Projects and on the insurance proceeds of the Projects and ordered that Wabash obtain court approval for any future construction projects. REA and CFC assert this is not adequate protection, primarily because the Projects will depreciate while the $613,396.00 cash in which appellees would otherwise have had an interest would not have depreciated.

The standard for the adequacy of protection is that the secured creditor receive the value for which he bargained. *Martin v. United States (In re Martin)*, 761 F.2d 472, 474 (8th Cir.1985). Section 363(*o*)(1) of 11 U.S.C. declares that "the trustee has the burden of proof on the issue of adequate protection"—in this case Wabash, as debtor-in-possession, stands in the shoes of the trustee. The Bankruptcy Court found that Wabash had met its burden because it offered the replacement lien and "suggested" the lien was adequate. This Court finds that "suggesting" a lien is adequate is not sufficient to meet the burden of proving the protection affords the creditor the value for which he bargained. At the least, Wabash should offer evidence that the Projects are worth their cost, evidence as to whether they are depreciating and at what rate, and evidence as to the extent to which the depreciation, if any, may be offset by increased contract revenues (in which REA and CFC also have a security interest) from increased electricity sales resulting from the Projects.

Accordingly, the Court affirms that part of the ruling below granting the replacement lien and requiring court approval for future Wabash construction projects. However, the Bankruptcy Court's decision denying additional protection to REA and CFC must be vacated and the case remanded for consideration of additional evidence from Wabash on the adequacy of the protection. Only then can the Bankruptcy Court properly assess the appellees' additional requests.

■ REA and CFC also sought sanctions, which the Bankruptcy Court denied, finding that although Wabash had improperly used cash collateral to construct the Projects, all parties had dawdled in obtaining definitive judicial intervention and that the legal issues were murky at best. Because this Court finds that the denial of sanctions was not clearly erroneous, this part of the Bankruptcy Court's decision is affirmed. Likewise, we affirm the Bankruptcy Court's denial of CFC's request for costs and expenses because CFC presented no evidence of its costs and expenses.

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed in part and vacated in part, and this cause is remanded for further proceedings in accordance with this entry.